UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NICHOLAS CIFARELLI,

       Plaintiff,

v.                             Case No: 2:17-cv-412-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

---

## OPINION AND ORDER

Plaintiff Nicholas Cifarelli seeks judicial review of the denial of his claims for a period of disability and disability insurance benefits ("DIB") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed the record, the Joint Memorandum (Doc. 17) and the applicable law. For the reasons discussed herein, the decision of the Commissioner will be affirmed.[1]

### I.    Issues on Appeal[2]

Plaintiff raises three issues on appeal: (1) whether the Administrative Law Judge ("ALJ") properly evaluated the opinions of the treating physicians and the non-examining state agency medical consultant; (2) whether substantial evidence

---

[1] Both parties have consented to the jurisdiction of the United States Magistrate Judge. Docs. 10, 12.

[2] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

supports the ALJ's assessment of Plaintiff's credibility; and (3) whether the ALJ's residual functional capacity ("RFC") finding adequately accounts for Plaintiff's manipulative limitations.

## II.  Background and Relevant Medical History

### a.  *Summary of medical evidence – physical impairments*

On December 18, 2013, Plaintiff suffered a fainting spell after receiving an injection of lidocaine in preparation for a thyroid biopsy. Tr. 253. After this episode, he experienced pain in his right shoulder and visited orthopedist Dale Greenberg, M.D., on December 26, 2013. Tr. 271-72. During this appointment, Dr. Greenberg observed Plaintiff was unable to raise his right arm from his side and had pain and weakness in his shoulder. Tr. 271. Plaintiff rated his shoulder pain four on a scale of one to ten. *Id.* Dr. Greenberg noted Plaintiff had previously undergone surgery on his right rotator cuff "eight or nine years" prior. *Id.* Dr. Greenberg also indicated Plaintiff had right shoulder impingement and tendonitis and may have suffered a rotator cuff tear. Tr. 272.

Plaintiff visited endocrinologist Arelis Madera, M.D., on January 7, 2014, reporting persistent pain in his right shoulder and frustration that he was taking time off work. Tr. 255-57. The next day, Plaintiff went back to Dr. Greenberg who confirmed he had a rotator cuff tear on his right shoulder. Tr. 273-74. Plaintiff decided to undergo arthroscopic surgery to repair the tear. Tr. 274. Dr. Greenberg performed Plaintiff's second right rotator cuff surgery in January 2014.[3] *See* Tr.

---

[3] The record does not indicate the precise date of Plaintiff's second rotator cuff surgery. *See generally* Tr. 245-315. As noted by the ALJ, there are no hospital or operative

275.

In Plaintiff's first post-operative appointment on January 22, 2014, Dr. Greenberg noted Plaintiff appeared to be healing well and was neurovascularly intact but would be off work for at least three months. *Id.* In a follow-up appointment on January 29, 2014, Dr. Greenberg noted Plaintiff had begun physical therapy. Tr. 276. Plaintiff continued with physical therapy in January and February, and in a subsequent appointment on February 26, 2014, Dr. Greenberg noted Plaintiff had good passive range of motion and improving active range of motion in his right shoulder. *See* Tr. 276-77. Although Plaintiff reported discomfort in his right shoulder, Dr. Greenberg indicated pain was "typical about a month or so after surgery." Tr. 277.

During an appointment with Dr. Greenberg on March 19, 2014, Plaintiff reported significant pain in his right shoulder. Tr. 278. After an examination, Dr. Greenberg noted Plaintiff had developed swelling in his shoulder joint and had lost some range of motion, but he found both the repair and Plaintiff's shoulder strength were intact. *Id.* Dr. Greenberg injected Plaintiff's shoulder with Celestone and Marcaine. *Id.*

On April 2, 2014, Dr. Greenberg reevaluated Plaintiff's recovery and indicated Plaintiff had a grinding sensation and discomfort in his shoulder. Tr. 279. Dr. Greenberg noted, however, Plaintiff had good cuff strength, abduction and range of motion. *Id.* X-rays of Plaintiff's right shoulder showed "suture anchors to be in

---

reports for either of Plaintiff's rotator cuff surgeries. Tr. 16; *see generally* record.

good position" and in alignment. *Id.* Dr. Greenberg assessed Plaintiff with bursitis and injected Plaintiff's shoulder with Celestone and Marcaine. *Id.*

During his last appointment of record with Dr. Greenberg on April 16, 2014,[4] Plaintiff reported that the continued pain in his right shoulder interfered with his daily living. Tr. 280. After an examination, Dr. Greenberg noted Plaintiff experienced a grating sensation on circular movement of his shoulder, pain on resistive abduction and some weakness in abduction. *Id.* On the other hand, Dr. Greenberg found no gross instability and that Plaintiff was neurovascularly intact. *Id.* Dr. Greenberg subsequently referred Plaintiff to another physician in his practice, orthopedist Robert Stchur, M.D. Tr. 280.

At his first appointment with Dr. Stchur on April 23, 2014, Plaintiff reported pain, crepitus and difficulty raising his right arm. Tr. 281. Plaintiff told Dr. Stchur that taking Ibuprofen relieved some pain and allowed him to actively raise his right arm. *Id.* Dr. Stchur noted Plaintiff had nearly full active range of motion with mild discomfort and crepitus. *Id.* Further, Dr. Stchur opined Plaintiff's discomfort was typical at his stage of recovery but ordered a CT scan to determine whether the rotator cuff repair was intact. *Id.*

At Plaintiff's appointment on April 30, 2014, Dr. Stchur noted Plaintiff's range of motion and pain were unchanged. Tr. 282. The CT scan revealed a recurrent rotator cuff tear on Plaintiff's right shoulder. *Id.* Dr. Stchur opined that the new

---

[4] In Dr. Greenberg's medical opinion, he states he examined Plaintiff on May 3, 2014. Tr. 292. The record does not contain treatment notes from this appointment. *See generally* Tr. 245-315.

tear was "definitely repairable." *Id.* Plaintiff decided to proceed with another surgery to repair his right rotator cuff, and Dr. Stchur performed a third rotator cuff surgery in May 2014. Tr. 283-84.

On May 16, 2014, Dr. Stchur evaluated Plaintiff and noted he was recovering well and would begin physical therapy in about four weeks. Tr. 284. In subsequent follow-up appointments on June 11, 2014, and July 23, 2014, Dr. Stchur noted Plaintiff's range of motion was improving, and he was experiencing less pain. Tr. 285-86. During the latter appointment, Dr. Stchur estimated Plaintiff would need at least three more months of physical therapy before reaching full recovery and at that time could not perform his job. Tr. 286. Dr. Stchur recommended Plaintiff follow up with him in three months for a repeat check. *Id.* There are no records of a follow-up visit after that date. *See generally* record.

On the same day, July 23, 2014, Dr. Greenberg and Dr. Stchur filed a joint Physician's Report to the Florida Retirement System ("FRS") for Plaintiff. Tr. 293-94. They stated Plaintiff had "[s]evere limitation of functional capacity . . ." and was "permanently incapable of any kind of work . . ." due to a right rotator cuff tear. *Id.* They opined Plaintiff was unable to use his right arm and would not reach "maximum medical improvement" for three to six months from the date of the report. *Id.* They opined Plaintiff was "totally and permanently disabled from gainful employment." *Id.* Dr. Greenberg subsequently filed another Physician's Report with FRS on September 3, 2014 that was identical to the previous filing, except he did not indicate when he expected Plaintiff to reach maximum medical improvement. Tr. 292.

On March 12, 2015, internist Pascal Bordy, M.D., performed a consultative examination of Plaintiff for the Office of Disability Determination Services. Tr. 296-305. Dr. Bordy noted Plaintiff's chief complaints were chronic lower back pain due to degenerative disc disease at L5-S1 and constant pain in his right shoulder. Tr. 296-97. Plaintiff rated his back pain at eight out of ten and reported that standing, bending, lifting and walking aggravated the pain. Tr. 296. Dr. Bordy determined Plaintiff had a deviated spine, abnormally high muscle tone in the lumbar area of his back and moderately reduced range of motion. Tr. 300, 303. Regarding his right shoulder, Plaintiff rated his pain at seven out of ten and reported that reaching and attempting to raise his right arm would aggravate the pain. Tr. 297. After reviewing Plaintiff's medical history and performing a physical examination, Dr. Bordy determined Plaintiff had pain and tenderness in his right shoulder joint without swelling, muscle atrophy in his right deltoid and normal muscle strength and fine manipulation in his right arm. Tr. 298. Dr. Bordy noted Plaintiff had nearly full range of motion in his right arm with pain; Plaintiff's only limitation was slightly reduced forward elevation. Tr. 303.

Later that month, on March 31, 2015, state agency consultant Girija Padmanabh, M.D., performed the reconsideration review of Plaintiff's disability claim. Tr. 73-84. Although Dr. Padmanabh found the medical evidence substantiated Plaintiff's "statements about intensity, persistence and functionally limiting effects of the symptoms . . . .", she determined Plaintiff was not disabled and was capable of performing light work. Tr. 77, 83. Dr. Padmanabh opined Plaintiff

could lift or carry twenty pounds occasionally and ten pounds frequently; stand, sit or walk for six hours in an eight-hour work day; was limited in his ability to push, pull and reach in all directions with his right arm; and should "[a]void concentrated exposure" to hazards. Tr. 78-80. Further, Dr. Padmanabh gave little weight to Dr. Greenberg and Dr. Stchur's opinions regarding whether Plaintiff was permanently disabled because this determination was reserved for the Commissioner. Tr. 82.

Plaintiff next sought treatment from the Virginia B. Andes Volunteer Community Clinic on February 25, 2016. Tr. 311-14. Terry Cargile, ARNP, noted Plaintiff had adhesive capsulitis and pain on moving his right shoulder. Tr. 312-13. Ms. Cargile prescribed Plaintiff five hundred milligrams of Naproxen and ten milligrams of Baclofen, with directions to take twice daily for the pain. Tr. 311, 313. Plaintiff returned to the Virginia B. Andes Community Clinic on May 23, 2016, and Ms. Cargile noted Plaintiff had a muscle deformity on his left bicep that had been present for two or three months, pain in his left arm, and continued pain in his right shoulder. Tr. 310. Medication helped but did not resolve his pain. *Id.* Ms. Cargile also recommended Plaintiff visit a chiropractor. *Id.*

### b. *Other evidence and testimony*

On November 14, 2014, in an interview with the Social Security Administration (SSA), Plaintiff reported constant pain in his right shoulder and that he had no strength to lift or carry with his right arm. Tr. 167-69. On the same day, Plaintiff completed a Pain Questionnaire for Florida Health and reported constant pain in his right shoulder, rated eight out of ten. Tr. 178-81. Plaintiff stated

"lifting, reaching, change of weather, [and] coughing" aggravated his pain, and he experienced "very little relief" from ice and medication. Tr. 178-79. Plaintiff indicated he had difficulty performing daily activities including cutting food, showering, washing his hair, sweeping, mopping, reaching for items on shelves, lifting shopping bags, sleeping, turning the steering wheel while driving, yard work, home maintenance and improvement, standing and walking his dogs. Tr. 179-80. On January 11, 2015, Plaintiff completed a second Pain Questionnaire for Florida Health and reported the same complaints, adding only that he experienced difficulty putting on shirts and washing his back. Tr. 189-92.

In Plaintiff's function report to the SSA on January 11, 2015, he indicated he lived in a house by himself and cared for his pets. Tr. 193-200. He noted caring for his pets caused pain in his right shoulder. Tr. 194. Plaintiff also stated he regularly drove himself, went out alone and shopped for himself. Tr. 196. He reported he was unable to perform enjoyable activities such as fishing and building things because of his right shoulder pain. Tr. 197. Further, Plaintiff stated he was unable to lift more than five pounds, had no strength in his hands, could not walk for more than a half-mile or fifteen minutes without resting and was unable to concentrate on tasks because of his pain. Tr. 198.

On July 7, 2016, Plaintiff testified at the administrative hearing that he had constant pain in his right shoulder, rated seven out of ten, and he had lost strength in his right arm. Tr. 31, 41. When asked about his ability to lift and carry, Plaintiff testified he was unable to lift more than ten pounds with both arms together due to

his right shoulder pain and a tear in his left bicep.   Tr. 43.   Plaintiff stated his right shoulder pain interferes with his ability to perform daily tasks including personal care, home maintenance and driving for more than thirty minutes at a time.   Tr. 44-45.   Plaintiff also testified he had degenerative disc disease in L5-S1 and experienced "locking up and extreme pain every day" in the lower lumbar area which made bending, lifting, standing and walking difficult.   Tr. 45-47.   He said medications helped "a little bit[,]" but standing or sitting for more than five to ten minutes in one position would cause spasms.   Tr. 46.   Plaintiff responded he had four "bad days" per week on which he is "basically bedridden."   Tr. 48.   When asked how many days he would miss if he had a job performing light work, Plaintiff testified he would miss twenty days per month due to pain.   Tr. 50.

### III.   Summary of the ALJ's Decision

On November 10, 2014, Plaintiff filed an application for DIB, alleging his disability began December 9, 2013, due to a torn right rotator cuff which caused constant pain in his right arm and shoulder and permanent limited use of the right arm.   Tr. 61, 150-56.   Plaintiff's application was denied initially and upon reconsideration.   Tr. 61-71, 73-84.   On April 22, 2015, Plaintiff requested a hearing before an ALJ.   Tr. 97.   ALJ Brian Lucas held a hearing on July 7, 2016.   Tr. 31-60.   Plaintiff, who was represented by counsel, testified at the hearing.   *Id.*   On August 17, 2016, the ALJ issued a decision finding Plaintiff was not disabled from December 9, 2013, through the date of the decision.   Tr. 10-20.   At step one, the ALJ found Plaintiff met the insured status requirements of the Social Security Act and

had not engaged in substantial gainful activity since December 9, 2013, the alleged onset date. Tr. 12. At step two, the ALJ determined Plaintiff had the following severe impairments: torn rotator cuff in his right shoulder, degenerative disc disease and muscle deformity on his left bicep. Tr. 13. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listing. *Id.*

The ALJ then determined Plaintiff had the RFC to perform light work,[5] subject to certain limitations:

> [Plaintiff] is limited to frequent but not constant pushing, pulling and reaching to the front, laterally and overhead with the right upper extremity; [Plaintiff] can never climb ladders, ropes or scaffolds; but [Plaintiff] can occasionally climb ramps and stairs; [Plaintiff] is limited to occasionally balancing, kneeling, stooping, crouching, and crawling; [Plaintiff] must avoid concentrated exposure to extreme cold; and avoid all exposure to hazards including unprotected heights and moving machinery.

Tr. 13-14. Next, at step four, the ALJ found Plaintiff was capable of performing his past relevant work as a deli cutter/slicer. Tr. 18. Relying on the testimony of the vocational expert ("VE"), the ALJ alternatively determined Plaintiff could perform

---

[5] The regulations define light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though weight lifted may be very little, a job in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

the requirements of representative occupations such as poultry packing machine tender, information clerk and school bus monitor, each of which are unskilled jobs at the light exertional level. Tr. 19-20. Thus, the ALJ found Plaintiff was not disabled from December 9, 2013, through the date of the decision, August 17, 2016. Tr. 20.

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on June 9, 2017. Tr. 1-6. Accordingly, the decision made on August 17, 2016, is the final decision of the Commissioner. Plaintiff filed an appeal in this Court on July 21, 2017, and this matter is ripe for review. Doc. 1.

## IV.  Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).[6] Substantial evidence is "more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted).

"In determining whether substantial evidence supports a decision, we give

---

[6] After the ALJ issued the decision, certain Social Security rulings and regulations were amended, such as the regulations concerning the evaluation of medical opinions. *See e.g.*, 20 C.F.R. § 404.1520c (effective March 27, 2017), 404.1527 ("For claims filed . . . before March 27, 2017, the rules in this section apply."). The Court will apply rules and regulations in effect at the time of the ALJ's decision. *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).

great deference to the ALJ's factfindings." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact or found that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

## V. Discussion

### a. Whether substantial evidence supports the ALJ's decision to assign no weight to the treating physicians' opinions and great weight to the non-examining medical consultant's opinion

#### i. Dr. Greenberg and Dr. Stchur

The ALJ determined the identical opinions provided by Plaintiff's treating physicians, Dr. Greenberg and Dr. Stchur, were "not consistent with the record as a whole" because the objective medical evidence, specifically the later consultative examination findings, did not support the limitations described in their opinions. Tr. 17. Also, the ALJ noted "opinions regarding an individual's ability to work is [sic] an administrative finding reserved for the Commissioner." *Id.*

Plaintiff argues the ALJ improperly discounted the opinions of Dr. Greenberg

and Dr. Stchur that Plaintiff is permanently disabled from gainful employment due to his right rotator cuff tear. Doc. 17 at 11-12; *see* Tr. 292-94. Plaintiff contends the subsequent medical evidence was consistent with the opinions of Dr. Greenberg and Dr. Stchur because later examinations revealed pain, tenderness and muscle atrophy in Plaintiff's right shoulder. Doc. 17 at 12; Tr. 297-98. Plaintiff also asserts the ALJ erred in dismissing both opinions because they contained specific opinions regarding Plaintiff's limitations. Doc. 17 at 12-13; *see* Tr. 292-94. Finally, Plaintiff maintains the opinions are entitled to weight because they were the basis of Plaintiff's FRS disability benefits award. Doc. 17 at 11 (citing Tr. 292-94).

The Commissioner responds the ALJ properly assigned no weight to Dr. Greenberg's and Dr. Stchur's opinions because they conflicted with Dr. Bordy's later examination findings, Dr. Greenberg's and Dr. Stchur's own treatment notes, other physical examination records and Plaintiff's daily activities. Doc. 17 at 15-17. Also, the Commissioner asserts the ALJ did not err in discounting the opinions because disability determinations are reserved to the Commissioner. *Id.* at 17.

In evaluating the medical opinions of record, including those of treating medical providers, examining medical providers and non-examining state agency medical consultants, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179; *see also* 20 C.F.R. § 404.1527(e); *Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x 874, 877 (11th Cir. 2006). "Medical opinions are statements from . . . acceptable medical sources that reflect judgments about the nature and severity of [a claimant's]

impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s) and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); *Winschel*, 631 F.3d at 1178-79.

When determining how much weight to afford a medical opinion, the ALJ considers whether there is an examining or treating relationship and the nature and extent thereof; whether the source offers relevant medical evidence to support the opinion; consistency with the record as a whole; the specialization of the source, if any; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6). Opinions of treating sources usually are given more weight because treating physicians are the most likely to be able to offer detailed opinions of the claimant's impairments as they progressed over time and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. § 404.1527(c)(2). Medical source opinions may be discounted, however, when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole. SSR 96-2p, 1996 WL 374188 at *4; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004). Further, the ultimate opinions as to whether a claimant is disabled, the severity of a claimant's impairments, the claimant's RFC and the application of vocational factors are exclusively reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1)-(2); SSR 96-6p, 1996 WL 374180 (July 2, 1996).

The ALJ's failure to explain with particularity the weight given to a medical

opinion is harmless, however, if it did not affect the ALJ's ultimate determination. *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 557-58 (11th Cir. 2015) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)). The Eleventh Circuit has held the ALJ does not need to "specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1211 (alteration in original) (internal quotation marks and citation omitted). The Eleventh Circuit has explained that the question before the court is whether substantial evidence in the record supports the ALJ's opinion as a whole. *Id.* (citation omitted).

Here, the ALJ gave two reasons for dismissing the opinions of Dr. Greenberg and Dr. Stchur: They were inconsistent with the medical evidence as a whole, and they contained administrative findings reserved to the Commissioner. Tr. 17. First, the ALJ determined the treating physicians' opinions were inconsistent with the medical evidence as a whole because the opinions conflicted with Dr. Bordy's examination findings. *Id.* In his consultative examination notes, Dr. Bordy indicated Plaintiff had mild muscle atrophy and signs of pain and tenderness in his right shoulder. Tr. 298. The ALJ noted that although muscle atrophy and signs of pain and tenderness suggest diminished use of the right arm, Dr. Bordy's notes also reveal Plaintiff had nearly full range of motion and normal strength. Tr. 16 (citing Tr. 298, 303). The ALJ concluded the examination findings were inconsistent with the treating physicians' opinions because Dr. Bordy's objective medical notes revealed

Plaintiff was able to use his right arm with only a few limitations. Tr. 17; *see* Tr. 292-94, 298, 303.

Plaintiff argues the ALJ's reason for finding Dr. Greenberg's and Dr. Stchur's opinions were inconsistent with the medical evidence as a whole was insufficient because the only support the ALJ provided for his conclusion was the conflict with Dr. Bordy's examination findings. Doc. 17 at 12. This argument is unavailing, however, because the ALJ need not specifically refer to every piece of evidence supporting his decision. *See Dyer*, 395 F.3d at 1211. While the ALJ may have erred by failing to explain the inconsistencies between the treating physicians' opinions and other parts of the medical record, this error was harmless because the ALJ considered the record as a whole by accurately summarizing Plaintiff's medical records, and substantial evidence supports his decision. *See* Tr. 15-17.

In his summary, the ALJ noted Dr. Greenberg's treatment notes indicated Plaintiff had pain and weakness in his right shoulder in December 2013 and January 2014 prior to his second rotator cuff surgery. Tr. 16; *see* Tr. 271-74. The ALJ explained, however, that Dr. Greenberg's notes from follow-up appointments after the surgery indicated Plaintiff had normal strength and only slightly diminished range of motion in his right arm with discomfort. Tr. 16; *see* Tr. 277-78. Plaintiff's records indicate he had weakness and diminished range of motion prior to his third surgery in May 2014. Tr. 279-80. The ALJ further explained that from May 2014 to July 2014, Dr. Stchur consistently noted Plaintiff had good or improving range of motion and strength despite his continued pain. Tr. 16 (citing Tr. 281-86).

Later in the summary of medical evidence, the ALJ stated Plaintiff received medical care from Virginia B. Andes Community Clinic in February 2016 and May 2016. Tr. 17; *see* Tr. 309-14. The ALJ noted the clinic only treated Plaintiff's shoulder and back pain with ten milligrams of Baclofen at night and five hundred milligrams of Naproxen twice a day. Tr. 17 (citing Tr. 310-11, 313). Lastly, the ALJ noted Plaintiff did not receive any medical treatment, even from emergency or indigent care providers, from July 2014 to February 2016. Tr. 17. The ALJ explained this gap in treatment does not corroborate the level of limitation Plaintiff suggests. Tr. 18. Plaintiff later argues he was unable to receive treatment during this time due to lack of insurance and resources. Doc. 17 at 21. Although "a claimant's inability to afford a prescribed medical treatment excuses noncompliance" with a course of treatment or failure to seek treatment, the record indicates Plaintiff was able to obtain free or low cost medical care through FRS beginning in September 2014, and Plaintiff did not use this benefit until February 2016. *See* Tr. 295, 308; *Dawkins v. Bowen*, 848 F.2d 1211, 1212 (11th Cir. 1988). Nevertheless, the ALJ relied on other medical evidence in the record to discount the treating physicians' opinions, including Dr. Bordy's examination findings, Dr. Greenberg's and Dr. Stchur's own treatment notes and the records from Virginia B. Andes Community Clinic. *See* Tr. 15-17. Based on the ALJ's accurate summary of the medical evidence, the Court concludes the ALJ did not broadly reject Dr. Greenberg's and Dr. Stchur's opinions but considered Plaintiff's medical condition as a whole. *See Dyer*, 395 F.3d at 1211. Therefore, substantial evidence supports the ALJ's determination.

The ALJ also concluded Dr. Greenberg's and Dr. Stchur's opinions were entitled to no weight because their opinions constituted administrative findings reserved for the Commissioner. Tr. 17. Because the treating physicians' opinions that Plaintiff is disabled and can have no use of his right arm would be dispositive of the case, the ALJ was not required to assign any special significance to these opinions. *See* 20 C.F.R. § 404.1527(d)(2). Thus, the ALJ did not err in assigning no weight to the opinions.

Plaintiff further argues the ALJ should have given some weight to Dr. Greenberg's and Dr. Stchur's opinions because the FRS based its award of disability benefits to Plaintiff on these opinions. Doc 17 at 11. Disability determinations of other agencies are not binding on the SSA; however, they are usually entitled to "great weight." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1241 (11th Cir. 1983). Although the ALJ did not directly address the FRS's disability determination, the ALJ effectively evaluated the FRS's determination because the FRS based its determination primarily on Dr. Greenberg's and Dr. Stchur's opinions. *See* Fla. Stat. § 121.091(4)(c)(1) (proof of disability includes "certification of the member's total and permanent disability by two licensed physicians of the state" and any medical reports as required by the administrator). The ALJ properly, if indirectly, discounted the FRS disability determination because the ALJ correctly concluded that the bases of the FRS decision—Dr. Greenberg's and Dr. Stchur's opinions—were inconsistent with the medical evidence as a whole. *See* Tr. 17. Therefore, the ALJ did not err in assigning no special weight to Dr. Greenberg's and Dr. Stchur's

opinions.   Therefore, the Court finds the ALJ properly weighed the opinions of Dr. Greenberg and Dr. Stchur.

ii.     Dr. Padmanabh

After discounting the opinions of Dr. Greenberg and Dr. Stchur, the ALJ found the opinion of Dr. Padmanabh, the state agency medical consultant, was consistent with the medical evidence as a whole and assigned it great weight.   Tr. 18.   Plaintiff argues the ALJ did not provide adequate reasons for assigning more weight to Dr. Padmanabh's opinion than to those of the treating physicians.   Doc. 17 at 13.   The Commissioner responds the ALJ properly assigned more weight to Dr. Padmanabh's opinion because the ALJ relied on substantial evidence and did not base his decision solely on Dr. Padmanabh's opinion.   *Id.*   at 18.

The ALJ may only give weight to opinions of non-examining medical sources to the extent the medical evidence of record supports their opinions.   20 C.F.R. § 404.1527(c)(3).   The Eleventh Circuit has consistently held a consulting physician's opinion is entitled to little weight if it conflicts with a treating physician's opinion. *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).   Moreover, a non-examining physician's report or opinion, "taken alone, [does] not constitute substantial evidence on which to base an administrative decision."   *Id.* (citing *Strickland v. Harris*, 615 F.2d 1103, 1109 (5th Cir. 1980)).   The ALJ may give substantial weight to a non-examining physician's opinion that conflicts with the treating physician's opinion, however, if the ALJ relies on substantial evidence and does not solely base his decision on the non-examining physician's opinion.

*Wilkinson v. Comm'r of Soc. Sec.*, 289 F. App'x 384, 386 (11th Cir. 2008) (citing *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985)).

Here, the ALJ did not err by relying on Dr. Padmanabh's opinion because substantial evidence supported his decision to give it greater weight. The ALJ considered the opinion in conjunction with other medical evidence, including evidence from the treating and consultative examining physicians. Tr. 15-18. The ALJ explained that he assigned great weight to Dr. Padmanabh's opinion because the medical evidence as a whole supported her opinion, including Dr. Greenberg's and Dr. Stchur's treatment notes and Dr. Bordy's examination notes. *See* Tr. 15-18. As discussed above, the ALJ found Dr. Greenberg's and Dr. Stchur's treatment notes revealed Plaintiff's range of motion and strength were improving despite his pain. *See* Tr. 15-16, 277-86. Further, Dr. Bordy's report indicated Plaintiff had only slightly limited range of motion and normal strength in his right arm despite pain and tenderness. *See* Tr. 16-17, 297-98, 303.

The ALJ also explained Dr. Padmanabh reviewed all the available records and used the evidence of Plaintiff's condition from the notes of Dr. Greenberg, Dr. Stchur and Dr. Bordy to determine limitations to Plaintiff's RFC. Tr. 15, 17-18; *see* Tr. 77-81, 83. The ALJ did not rely solely on Dr. Padmanabh's opinion for his disability determination because he independently evaluated all the medical evidence in the record. *See* Tr. 15-18. Thus, the ALJ properly assigned substantial weight to Dr. Padmanabh's opinion after evaluating the degree to which the medical evidence as a whole supported the physician's opinion. *See* 20 C.F.R. § 404.1527(c)(3); *Wilkinson*,

289 F. App'x at 386. Therefore, the Court finds substantial evidence supports the ALJ's decision to accord no weight to Dr. Greenberg's and Dr. Stchur's opinions and great weight to Dr. Padmanabh's opinion.

### b. *Whether the ALJ properly assessed Plaintiff's credibility*

When assessing the credibility of subjective complaints of pain, an ALJ considers: (1) evidence of an underlying medical condition; and (2) objective medical evidence either (a) confirming the severity of alleged symptoms, or (b) indicating that the medical condition could be reasonably expected to cause symptoms as severe as alleged. *See* 20 C.F.R. § 404.1529; *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the objective medical evidence does not confirm the severity of the alleged symptoms but indicates that the claimant's impairments could reasonably be expected to produce some degree of pain and other symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on his ability to work. *See* 20 C.F.R. § 404.1529(c)(1); *Wilson*, 284 F.3d at 1225-26; *Foote*, 67 F.3d at 1561. The ALJ compares the claimant's statements with the objective medical evidence, the claimant's daily activities, treatment and medications received, and other factors concerning limitations and restrictions the symptoms cause. *See* 20 C.F.R. § 404.1529(c). "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (citations omitted). "A clearly articulated

credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562.

The ALJ determined Plaintiff's "medically determinable impairments could produce his alleged symptoms; however, the objective medical evidence did not support the degree to which he alleged their limiting effects." Tr. 18. The ALJ determined the objective medical evidence did not support the alleged severity of Plaintiff's symptoms because, as explained above, Dr. Greenberg, Dr. Stchur and Dr. Bordy stated in their notes that Plaintiff consistently had good or improving range of motion and normal strength, manipulation and sensation in both arms despite mild muscle atrophy and pain. *See* Tr. 15-17, 277-79, 281-82, 285-86, 298, 303. The ALJ also noted the evidence did not support Plaintiff's complaints of high levels of chronic pain because there are no treatment notes in the record dated between July 23, 2014, and February 25, 2016. *See* Tr. 17. Finally, the ALJ found Plaintiff's testimony was inconsistent because he testified he was bedridden "four to seven days per month" and later testified "he would miss twenty days of work" per month due to being bedridden on those days.[7] Tr. 15.

The ALJ further determined Plaintiff's subjective symptoms were inconsistent with his daily activities. *Id.* Plaintiff testified he had constant pain, experienced "very little relief" from ice and medication, lost strength in his arm and was unable to perform personal care, enjoyable activities and home maintenance. Tr. 41-46.

---

[7] The Court notes the ALJ misstated this testimony as Plaintiff actually testified that he was bedridden "probably four out of the seven" days of the week and would miss work "[p]robably 20 out of the 30 days" of the month. Tr. 48, 50.

Plaintiff also testified he had four "bad days" per week on which he was "basically bedridden." Tr. 48. The ALJ explained, however, Plaintiff's statements regarding the limiting effects of his right shoulder condition were not consistent with his daily activities because he lived alone throughout the relevant period and regularly took care of himself and his dogs, drove himself to the store, shopped for himself and maintained the interior of his home. Tr. 18; *see* Tr. 44-45, 194, 196.

Plaintiff argues the ALJ erred by rejecting his testimony regarding the severity and limiting effects of his right shoulder pain because "[t]he ALJ's findings concerning credibility [were] impermissibly vague and [were] not supported by substantial evidence." Doc. 17 at 19-20. Specifically, Plaintiff argues the objective evidence in the record supports his subjective testimony because two orthopedic specialists, Dr. Greenberg and Dr. Stchur, found his complaints to be credible enough to support Plaintiff's application for FRS disability benefits. *Id.* at 20. Plaintiff also argues the presence of muscle atrophy in his right shoulder corroborates his subjective testimony that he cannot use his right arm. *Id.* Further, Plaintiff asserts his testimony at the hearing and his responses to the state agency questionnaires were consistent because he reported the same physical limitations in each statement. *Id.* at 20-21. Lastly, Plaintiff argues the ALJ made an unfair inference that Plaintiff's gap in treatment from July 2014 to February 2016 was evidence that he was not in severe pain. *Id.* at 21. The Commissioner responds the ALJ properly discredited Plaintiff's subjective testimony because it was inconsistent with the objective medical evidence, Plaintiff's living situation and daily activities.

*Id.* at 21-25.

The Court finds substantial evidence supports the ALJ's credibility determination. Plaintiff consistently alleged he had constant, severe pain in his right shoulder that prevented him from working and taking care of his personal needs and incapacitated him about four days per week. *See* Tr. 41-48, 168, 178-80, 190, 194, 198. As noted by the ALJ, although Plaintiff's subjective testimony suggests he could not use his arm due to debilitating pain, his doctors' notes reveal he was able to move his arm, had normal strength and did not appear to be in distress. *See* Tr. 18, 277-79, 281-82, 285-86, 297-98, 303. The ALJ properly considered the extent to which Plaintiff's described limitations were consistent with the objective medical evidence according to the requirements of 20 C.F.R. § 404.1529. *See* Tr. 18. Contrary to Plaintiff's argument, Dr. Greenberg's and Dr. Stchur's FRS opinions do not undermine the ALJ's adverse credibility determination. *See* Doc. 17 at 20. Medical opinions, even those given by treating physicians, are only considered to the extent they are consistent with the objective medical evidence. *See* 20 C.F.R. § 404.1529(c)(3). Here, as explained above, the ALJ found Dr. Greenberg's and Dr. Stchur's opinions were inconsistent with the medical evidence. *See* Tr.15-17.

Further, the Court finds no reversible error in the ALJ's inference that Plaintiff's gap in treatment from July 2014 to February 2016 was inconsistent with his claimed symptoms because the ALJ did not discredit Plaintiff's subjective testimony solely due to his gap in treatment. *See* Tr. 18. Instead, the ALJ properly relied on the objective medical evidence as well as his daily activities. *See id.*; SSR

16-3p, 2016 WL 1119029, at *8; *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1268 (11th Cir. 2015 (quoting *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003)). The Court similarly finds no reversible error in the ALJ's misstatement of Plaintiff's testimony regarding how many days per week he was bedridden because as discussed above, the ALJ's credibility determination was nonetheless supported by substantial evidence. *See* Tr. 15-16, 18; *Kemp v. Astrue*, 308 F. App'x 423, 425-26 (11th Cir. 2009). Therefore, the Court will not disturb the ALJ's credibility determination.

> c. *Whether the RFC adequately accounts for Plaintiff's manipulative limitations*

Finally, Plaintiff contends substantial evidence does not support the ALJ's RFC assessment because he failed to account for Plaintiff's manipulative limitations from his right shoulder impairment. Doc. 17 at 26. Specifically, Plaintiff argues his testimony, his treating physicians' opinions and the evidence of muscle atrophy in his right arm do not support the ALJ's RFC assessment that Plaintiff could frequently push, pull and reach laterally and overhead with his right upper extremity. *Id.* Plaintiff further argues the impact of his right shoulder impairment is particularly relevant to his RFC because he is right-handed. *Id.* Plaintiff asserts Grid Rule 201.14[8] would likely apply if he is restricted to sedentary work, thus rendering him disabled under the regulations. *Id.*

The Commissioner responds the ALJ properly assessed Plaintiff's RFC because

---

[8] Rule 201.14 of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, states that a claimant of advanced age who is limited to sedentary work, has a high school degree, can perform skilled or semi-skilled work, but does not have transferable skills, is "disabled' under the regulations.

the ALJ considered Plaintiff's subjective testimony, the medical evidence of record, the opinion evidence and Plaintiff's daily activities in making his RFC assessment. *Id.* at 27-29. The Commissioner also contends even if the ALJ erred in limiting Plaintiff to frequent use of his right upper extremity, the error was harmless because Plaintiff has not demonstrated he is incapable of performing the job the VE identified that required no reaching. *Id.* at 29.

When an impairment does not meet or equal a listed impairment, the ALJ assesses all the relevant medical and other evidence in the record to determine the claimant's RFC and whether the claimant can return to his past work. 20 C.F.R. § 404.1520(e). The RFC is the most a claimant can do despite his limitations. *See* 20 C.F.R. § 404.1545(a); *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC. *See* 20 C.F.R. § 404.1546(c). To determine the claimant's RFC, the ALJ must assess all the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements. 20 C.F.R. § 404.1545(a). The ALJ also considers the claimant's age, education and work experience in determining the claimant's RFC and whether he can return to his past relevant work. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(f)).

Here, the ALJ reviewed and discussed Plaintiff's testimony regarding his symptoms, the objective medical evidence of record and the opinion evidence provided by Plaintiff's treating physicians and the state agency medical consultant. Tr. 14-18. Contrary to Plaintiff's argument, the ALJ did consider the impact Plaintiff's

muscle atrophy had on his RFC because the ALJ explained Dr. Bordy reported normal range of motion and strength in Plaintiff's right arm despite mild atrophy in the right deltoid and signs of pain and tenderness.   *See* Tr. 16, 298, 303.   The ALJ also found the later medical evidence from the Virginia B. Andes Volunteer Community Clinic did not support greater limitations than those found in the earlier medical records because the clinic only prescribed a minimal course of treatment.   Tr. 17; *see* Tr. 309-14.   Therefore, the ALJ did not err by limiting Plaintiff to only frequent pushing, pulling and reaching to the front, laterally and overhead with his right arm because Plaintiff's muscle atrophy and pain did not substantially diminish the strength and range of motion in his right arm.   *See Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 854 (11th Cir. 2013) (affirming the ALJ's RFC assessment when the objective medical evidence supported a finding that the claimant's mild condition did not cause substantial manipulative limitations).

As discussed in more detail above, the ALJ properly weighed Plaintiff's subjective testimony and the opinions of Plaintiff's treating physicians, Dr. Greenberg and Dr. Stchur.   *See* Tr. 15, 17-18.   The ALJ considered Plaintiff's testimony regarding his right shoulder pain in light of his daily activities and the objective medical evidence and concluded Plaintiff's testimony was inconsistent with the evidence as a whole.   *See* Tr. 15, 18; *Compare* Tr. 41-48, 168, 178-80, 190, 194, 198 (Plaintiff's complaints that the pain in his right shoulder prevented him from working and incapacitated him four days per week) *with* Tr. 277-79, 281-82, 285-86, 298, 303 (treatment and examination notes from doctors revealing Plaintiff

consistently had good or improving range of motion and normal strength, manipulation and sensation in both arms despite mild muscle atrophy and pain).

Further, as discussed in more detail above, the ALJ properly discounted the opinions of Dr. Greenberg and Dr. Stchur because they were inconsistent with the medical evidence as a whole, including later consultative examination findings, and their opinions were disability determinations reserved to the Commissioner. *See* Tr. 17, 277-79, 281-82, 285-86, 298, 303. Also, as discussed in more detail above, the ALJ properly gave substantial weight to the opinion of Dr. Padmanabh, the state agency medical consultant, because the objective medical evidence supported her assessment. Tr. 17-18, 77-81, 83, 276-86. Therefore, the ALJ properly considered all the relevant evidence in the record when he made his RFC assessment and properly accounted for Plaintiff's manipulative limitations. *See* 20 C.F.R. § 404.1545(a). Accordingly, the Court finds substantial evidence supports the ALJ's RFC assessment.

## VI. Conclusion

Upon review of the record, the Court concludes the ALJ applied the proper legal standards and substantial evidence supported the ALJ's determination that Plaintiff was not disabled.

ACCORDINGLY, it is

**ORDERED:**

1. The decision of the Commissioner is **AFFIRMED.**

2.     The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 26th day of September, 2018.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record